Legal Mail
Received

SEP 1 7 2021

Dade C.I.

FILED BY ___ PG ___ D.C.

SEP 2 3 2021

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
## Miami Division

**ROY L. VARNIER,**
 Plaintiff,

Case No.: _____

TO BE ASSIGNED

**vs.**

**DR. FRANCK PAPILLON, CHIEF HEALTH OFFICER, (D.C.I.),**
**DR. A. PINO, M.D., (S.F.R.C.),**
**MR. MARK INCH, SECRETARY (D.O.C.),**
**MR. A. MARTINEZ, ASSISTANT WARDEN, (D.C.I.),**
 Defendant(s).

_____/

## PLAINTIFF'S CIVIL COMPLAINT
## UNDER 42 U.S.C. § 1983

Plaintiff, Roy L. Varnier, (Hereinafter, Plaintiff) *pro se*, pursuant to 42 U.S.C. § 1983, files this instant complaint for violations of civil rights against Defendants, Dr. Franck Papillon, C.H.O., (Hereinafter Papillon), Dr. A. Pino, (Hereinafter Pino), Mr. Mark Inch, Secretary F.D.O.C., (Hereinafter Mr. Inch) and Mr. A. Martinez, A.W. (Hereinafter Martinez) in their individual capacities.

## PRELIMINARY STATEMENT

The following civil complaint has been typed in the format provided by this Honorable Court's Clerk as required. Plaintiff respectfully submits his complaint as a pro-se litigant unskilled in

1

the science of law and wishes for his complaint and entreaties to be received as such.  See *Hall v. Bellman*, 935 F.3d 1106, 1110 (10th Cir. 1991).

## I.                    PARTIES TO COMPLAINT

A) Plaintiff:  Roy L. Varnier, at all times material to this action was a resident of Dade Corr. Inst., 19000 S.W. 377th Street, Florida City, FL  33034.

B) Defendants:

Def. (1)
Name:  Dr. Franck Papillon
Official Position:  Chief Health Officer
Employed by:  Dade Correctional Institution
Address:  19000 S.W. 377th Street, Florida City, FL  33034

Def. (2)
Name:  Dr. A. Pino
Official Position:  Medical Doctor
Employed by:  Dade Correctional Institution
Address:  19000 S.W. 377th Street, Florida City, FL  33034

Def. (3)
Name:  Mr. Mark Inch
Official Position:  Secretary, F.D.O.C.
Employed by:  State of Florida
Address:  501 South Calhoun Street, Tallahassee, FL  32399

Def. (4)
Name:  Mr. A. Martinez
Official Position:  Assistant Warden
Employed by:  Dade Correctional Institution
Address:  19000 S.W. 377th Street, Florida City, FL  33034

## INTRODUCTION

This is an action for compensatory, punitive and nominal damages alleging that the Defendants, contrary to the Eighth and Fourteenth Amendments to the United States Constitution, knowingly and willfully exercised deliberate indifference to the recognized rights of the Plaintiff, Roy L. Varnier, while he was incarcerated at Dade Correctional Institution beginning on April 1, 2021, and is ongoing as this instant complaint is being prepared

**II.**                    **JURISDICTION**

Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under the Constitution and laws of the United States.

Jurisdiction is also invoked pursuant to 28 U.S.C. § 1343(A)(3), in that this action seeks to redress the depravation, under color of State law, or the Rights secured to Mr. Varnier by the Eighth and Fourteenth Amendments to the United States Constitution.

Plaintiff's claims for relief are predicated on 42 U.S.C. § 1983, which authorizes actions to redress the depravation, under color of State law, of rights, privileges and immunities secured to the Plaintiff by the Constitution and laws of the United States and by 42 U.S.C. § 1988, which authorizes the award of attorney fees and costs to prevailing Plaintiffs in actions brought pursuant to 42 U.S.C. § 1983.

**III.**                          **PRISONER'S STATUS**

Plaintiff is a convicted and sentenced State prisoner.

**IV.**                          **STATEMENT OF CLAIM**

1)   On April 1, 2021, at approximately 5:00 a.m., Plaintiff slipped and fell on a wet floor in C-1 dormitory.

2)   Security was notified and Plaintiff was transported to the medical department in a wheelchair.

3)   Plaintiff was admitted to the E.R. Room and placed on a gurney in excruciating pain where he waited approximately (5) hours to be seen by a doctor.

4)   At approximately 10:00 a.m. on 4-1-21, an x-ray of Plaintiff's left ankle and lower back was taken by x-ray technician Mr. Schriver who is employed by Trident Care Imaging.

4

5)   Once Mr. Schriver completed the images and was able to view the injury on the x-ray machines monitor, he immediately contacted Dr. Franck Papillon who is the institution's Chief Health Officer, (C.H.O.) to review the image.

6)   When Papillon arrived to the E.R. Room he and the x-ray technician Mr. Schriver studied the multiple images that were taken, and doctor Papillon advised the Plaintiff that he saw no evidence of any breaks or fractures. **NOTE:** On 7-15-21 Plaintiff received copies of computer generated images of the initial x-rays which were viewed by Dr. Papillon the morning of the incident. After personal review of the same images it is clear that even a lay person would have recognized that the Plaintiff's fibula was clearly fractured.  "These images have been preserved for the purpose of discovery."

7)   After Dr. Papillon had determined that there was no evidence of a break or fracture, he advised the Plaintiff that he could use a set of crutches to ambulate while waiting for the x-ray results.

8)  Plantiff advised Dr. Papillon that the pain was unbearable and he was too large for the use of crutches, and requested the use of a wheelchair. **NOTE:**  <u>Plaintiff is 6' 2" tall and weighs 315 lbs.</u>

9)  Dr. Papillon completely ignored Plaintiff's obvious pain and denied him the use of a wheelchair and told him he would be placed on the call-out when the results from the x-rays returned.

10)  Plaintiff pleaded with Papillon to allow him the use of a wheelchair and something to elevate the excruciating pain and discomfort "all to no avail." **NOTE:**  <u>Plaintiff was given an Ace Bandage and (3) single dose packs of Ibuprofen and told to watch the call-out</u>.

11)  On April 6, 2021, five days later, the Plaintiff's ankle was badly swollen and black and blue.

12)  Plaintiff in excruciating pain walked to the medical department to both inquire about the results of his x-rays and pleaded for some medication to alleviate the pain and discomfort from ambulating long distances on wooden crutches.

13)  Plaintiff was denied any pain medication and told not to return to medical until he was notified.

6

14) On April 1, 2021 at 12:19 p.m., Dr. Gregory J. Orth, M.D., of Trident Care Imaging, had reviewed Plaintiff's x-rays and issued the following results and conclusions:

> 1) **Results:** There is an acute, obliquely oriented distal fracture diameta physeal fracture of the fibula beginning laterally above the level of the mortise and extending medially to the level of the mortise.
>
> 2) **Conclusion:** Acute fracture distal left fibula as above.

NOTE:  See Radiology Report Preserved for Discovery

15)  These images were made immediately available to Dr. Papillon for viewing on the same date of the Plaintiff's incident yet he was left to suffer severe pain and discomfort for almost two weeks, and to further compound the matter, on April 9, 2021, Dr. A. Pino reviewed the Radiology Report and never advised the Plaintiff of the severity or ordered any kind of medical treatment to relieve the pain and discomfort.

16)  On April 13, 2021, Plaintiff was called to the medical department and told by Dr. Papillon that he had a "small fracture" to the fibula and would need a cast.

17)   Plaintiff again pleaded with Papillon for the use of a wheelchair because he was unable to get to and from the dining hall to eat.   **NOTE:**   <u>Although Papillon still was resisting to accommodate Plaintiff with the wheelchair he did so after a lengthy argument by Mr. Varnier.</u>

18) Dr. Papillon, from the very date of Plaintiff's incident, 4-1-21, was provided with the Specialist's radiology report clearly stating the severity of the injury yet Papillon refused to act with urgency as required for such diagnosis thus delaying the proper treatment allowing the Plantiff to suffer from excruciating pain and discomfort.

19)   To further compound Plaintiff's condition, Dr. A. Pino, reviewed the Radiology Report on April 9, 2021, and after making himself completely aware of the severity of Plaintiff's serious medical condition, did absolutely nothing to ensure that he would not continue to suffer while ambulating on wooden crutches.   <u>See Radiology Report date stamped review by Dr. A. Pino on 4-9-21</u>.

20)   The fact that Papillon and Pino both saw firsthand Plaintiff's serious medical condition, and to completely ignore Plaintiff's severe condition and excruciating pain and discomfort

demonstrates more than mere negligence and as such violates Plaintiff's constitutional Right not to be subjected to cruel and unusual punishment.

21)   Both Dr. Papillon and Dr. A. Pino having personal and subjective knowledge of the risk of serious harm if Plaintiff's treatment was delayed and both disregarded that risk by more than mere negligence.

22)   On April 13, 2021, Plaintiff submitted a formal grievance alleging the pain and discomfort he's been subjected to since the incident without proper treatment and pain management.   See Grievance Log # 2104-463-074.

23)   On April 29, 2021, both C.H.O. Papillon and Assistant Warden A. Martinez issued their response denying Plaintiff's grievance.   Note:   Copies of grievance and response have been preserve for discovery.

24)   Plaintiff appealed the denial of grievance log # 2104-463-074 to the F.D.O.C. Secretary's office who ultimately responded in an untimely manner and with an erroneous response in violation of the Florida Administrative Code Chapter 33-103.011, and therefore

Plaintiff has complied with the requirements of the (P.L.R.A.) Prison Litigation Reform Act.

25) On April 14, 2021, Plaintiff was transported to Northshore Medical Center for what Dr. Papillon previously described as the purpose of placing his leg in a cast. However, when Plaintiff arrived to Northshore Medical Center, x-rays were conducted to further assess Plaintiff's injuries.

26) Upon the completion of the x-rays, Dr. Lopes, Raquel concluded the following history of Plaintiff's present illness clearly stating the character of symptoms are pain and swelling, and that the "exacerbating" factors include movement, weight bearing, walking and palpitation. NOTE: These exacerbating factors were caused by Dr. Papillon allowing Plaintiff to continue to walk for (13) days after the incident and denying him the use of a wheelchair as was required for such clearly noticeable injury which Papillon was able to review just hours after the Plaintiff had fallen.

27) Shortly afterwards, a doctor's assistant advised the Plaintiff that due to the factors listed above, major surgery would now be forthcoming, and that Plaintiff would need plates and screws placed in his leg to repair the injury. NOTE: Plaintiff was

<u>immediately admitted to the Medical Center for the purpose of surgery</u>.

28)   On April 15, 2021, the following day, surgery was performed by Dr. Imaze Davis at which time an 8-hole distal fibula plate, and 8-locking screws were placed in Plaintiff's left lower leg to repair the stress fracture and sutures were used to repair the syndesmotic ligament rupture.   **NOTE:**   <u>Plaintiff remained at Northshore Medical Center for the following (3) days for observation and was administered morphine every (4) hours for pain management</u>.

29)  On April 18, 2021, Plaintiff was discharged by Northshore Medical Center and transported back to Dade C.I. with full instructions for post-operative treatment as well as follow-up appointment.

30)  Post operative orders by both Imaze M. Davis (DPM) and Kotlyarova Velizaveta (DPM) were as follows:

> 1) Wound care once a day for (2) weeks;
> 2) Strict, no weight bearing;
> 3) Bed rest utilizing two pillows to elevate left leg; and,
> 4) To return to Northshore Medical Center in two weeks for further evaluation and treatment.   <u>See:   Page 3 of 4, Discharge</u>

<u>Summary date stamped 4-19-21 by Dr. F.
Papillon. "reserved for Discovery."</u>

31)   On 4-18-21 at approximately 8:00 p.m. Plaintiff was brought to the infirmary at Dade C.I. and left sitting in a wheelchair in excruciating pain until 9:00 a.m. the following morning. Approximately (13) hours without any further care or pain management.

32)  On 4-19-21, Plaintiff was ordered by security to report to C-1139-S, back to open population without any assistance and still experiencing excruciating pain and discomfort.

33)  Plaintiff then approached a nurse on duty and advised her that he was in severe pain and was told by security that he was being placed back into open population without any assistance.

34)  The nurse advised Plaintiff that she had no orders from Dr. Papillon to place him in the infirmary for observation or post-operative treatment.

35)  On 4-20-21, the following morning the Plaintiff woke up in unbearable pain and told the dorm officer he needed to see medical staff A.S.A.P.  <u>NOTE:  When Plaintiff arrived to the Medical Dept.</u>

and showed the nurse his swollen ankle and bloody dressing he was immediately admitted to the infirmary.

36)   On 4-20-21, Plaintiff submitted a Formal Grievance <u>Log # 2104-463-119</u> in regards to Dr. Papillon's misdiagnosis of his fracture when even a lay person could have seen such clear evidence of the fracture.

37)   Had Dr. Papillon not allowed Plantiff to walk and bear 300 plus pounds of weight on his injured ankle for a period of (13) days the fracture would have been minimally damaged.

38)   However, as determined by the specialist who performed the surgery on the Plaintiff, the exacerbating factors were as follows:   <u>movement, weight bearing, walking and palpitation.   SEE: Northshore Medical Center's Emergency/Urgent Care document also preserved for Discovery</u>.

39)   The actions taken by both Dr. Papillon and Dr. Pino both clearly exacerbated Plaintiff's injury causing him to suffer further damage and excruciating pain and discomfort without any ethical explanation.

40)   These acts by both Papillon and Pino demonstrate more than mere negligence and, as such, violate Plaintiff's constitutional right not to be subjected to such cruel and unusual punishment.

41)   Plaintiff's grievance log # 2104-463-119 was responded to and denied by both Dr. Papillon and A.W. A. Martinez on 4-29-21. "Grievance and Response preserved for Discovery."

42)   On 5-11-21, Plaintiff appealed the institutions response denying grievance log # 2104-463-119 to the Secretary for the Florida Department of Corrections.

43)   On 7-1-21, approximately (52) days later, Plaintiff received the Secretary's erroneous response in an untimely manner in violation of the Florida Administrative Code thus satisfying the (P.L.R.A) Prison Litigation Reform Act.   See Appeal Log # 21-6-15001 Response Preserved for Discovery.

44)   On 4-23-21, just (3) days after Plaintiff had undergone major surgery, consisting of steel plates and screws inserted inside his left ankle to repair an "acute distal fibula fracture" and sutures to repair the "left ankle syndesmotic ligament rupture."   Dr. Papillon ordered that the Plaintiff be discharged from the infirmary and placed back in open population "completely ignoring" the

14

specialist's orders for Plaintiff to remain on bed-rest with left leg elevated utilizing (2) pillows for minimum of two weeks, and to return Plaintiff for follow-up evaluation and further treatment. NOTE: Prison doctors and or officials may not interfere with or fail to carry out treatment that a specialist and or other medical official has prescribed or ordered, "such conduct amounts to deliberate indifference." A medical official who has only general knowledge about a particular field or medicine may not substitute his or her judgment for that of a specialist.

45)  Plaintiff pleaded with Dr. Papillon not to remove him from the infirmary, explaining to him that the pain both to his ankle and lower back was excruciating and unbearable, "all to no avail."

46)  Dr. Papillon personally reviewed the specialist's post-operative treatment plan issued by Northshore Medical Center and was clearly familiar with Plaintiff's serious medical condition, thus for him to completely ignore his serious medical condition demonstrates more than mere negligence.

47)  Dr. Papillon having personal and subjective knowledge of the risk of serious harm by ignoring the specialist's orders and disregarded that risk by more than mere negligence.

48)   On 4-8-21, Plaintiff returned to the infirmary for wound care and was informed by Nurse Robles that they were out of wound care supplies and suggested the Plaintiff re-use the soiled and bloody gauze already on his wound.  Plaintiff would not allow it and submitted a formal grievance the same day.

49)   On 4-29-21, the following day Plaintiff again returned to the infirmary for wound care at which time Nurse Abreau noticed extreme swelling and discharge and determined that the wound was infected.

50)    Nurse Abreau immediately contacted Dr. Papillon and advised him of the infection, and Papillon without even inspecting the wound advised Nurse Abreau to remove (9) of the (16) staples. NOTE:  At no time was any attempt made to contact Northshore Medical Center to corroborate with Plaintiff's treating physician in regards to the infection.

51)   On 5-4-21, Plaintiff again returned to the infirmary for wound care supplies at which time Dr. Papillon inspected the wound/incision and decided to remove (3) of the remaining (7) staples from the wound which is now badly infected.

52)   Plaintiff again advised Dr. Papillon of the excruciating pain in both his ankle and lower back and requested something to alleviate the unbearable pain, "to no avail."

53)   On 5-7-21, Plaintiff was called back to the medical department at which time Dr. Papillon removed the remaining (4) staples from the infected wound, and told Nurse Robles to apply a clean dressing.   NOTE:  For the second time Nurse Robles was unable to apply a new dressing due to the lack of wound care supplies.

54)   Plaintiff approached Papillon and asked why he has not returned to Northshore Medical Center as ordered by the specialist for follow-up treatment.   Plaintiff advised Papillon that he was supposed to see the specialist (2) weeks after the surgery and that on top of the infection, the pain in his ankle and lower back was/is excruciating.   NOTE:  Papillon told Plaintiff that he did not control scheduling priorities.

55) On 5-11-21, Plaintiff filed a Formal Grievance Log # 2105-463-050 due to Papillon refusing to address pain management. Plaintiff advised both security and medical personnel that the pain

was affecting his ability to walk, sleep, stand and other necessities of life such as getting to and from the dining hall to eat.

56)   On 5-14-21, the above mentioned grievance was responded to by both Dr. Papillon and A.W. A. Martinez and denied. Grievance ad Response preserved for Discovery.

57)   On 5-26-21, Plaintiff appealed Grievance Log # 2105-463-050 to the Secretary of the F.D.O.C. and again received an untimely response on 7-16-21 denying Plaintiff's plea for help.   NOTE: This grievance has satisfied the (PLRA) requirements.

58)   On 5-11-21, Plaintiff again reported to the medical department and Dr. Papillon again inspected the infection and simply stated that Plaintiff needed more antibiotics.

59) Finally on 5-19-21, after Plaintiff had submitted a flurry of grievances he was transported back to Northshore Medical Center for follow-up treatment approximately (5) weeks after having undergone major surgery.   NOTE:  On 4-15-21 the specialist wrote specific orders for the Plaintiff to be returned for follow-up treatment in two weeks.

60)   As soon as Dr. Imaze Davis, D.P.M. evaluated Plaintiff's wound she immediately ordered that he be emergency admitted to the hospital due to severe infection.

61)   The specialist, Dr. Imaze Davis, verbally explained to Plantiff that a second surgery would now be needed to remove dead tissue and clean out the infection.  <u>NOTE:  Dr. Imaze Davis also advised the Plantiff that the staples that were removed by the institution's medical provider prematurely caused the wound to open allowing the infection to fester.</u>

62)   On 5-21-21, Dr. Imaze performed the 2nd surgery on Plaintiff's infected wound to remove the dead tissue and applied a skin graft to promote healing.

63)   On 5-23-21, Plaintiff was discharged from Northshore Medical Center and transported back to Dade C.I.

64)   Per Dr. Monica Yee, D.P.M., Plaintiff would be placed in a special cam boot immediately upon his return to Dade C.I. to ensure stability and alleviate pain and further orders for daily wound care to prevent infection.

65)    On 6-1-21, Plaintiff received his first dressing change/wound care approximately (11) days after his return to Dade C.I.

66)    On 6-2-21, Plaintiff received the special cam boot approximately (12) days after his return to Dade C.I.   <u>NOTE: Another example of Centurion's medical provider's unnecessary delays in treating Plaintiff's serious medical needs</u>.

67)    Between the months of 4-1-21 and 9-5-21 approximately (5) months Plaintiff submitted flurries of grievances complaining of excruciating and unbearable pain to both his left ankle and lower back, "all to no avail," every grievance was simply denied.

68)    On 6-14-21, Dr. Papillon personally advised Plaintiff he wrote a prescription for pain management.   <u>NOTE: No such prescription was ever written</u>.

69)    On 7-12-21, Dr. Gaxiola during a scheduled clinic personally advised Plaintiff she would prescribe Naproxen for pain management.   <u>NOTE: Dr. Gaxiola failed to ensure Plaintiff received any pain medication</u>.

70)  On 8-19-21, Dr. Gaxiola again advised Plaintiff that she ordered Sulindac for pain management.  <u>NOTE:  Once again Gaxiola failed to ensure Plaintiff received his medication</u>.

71)  Plaintiff submitted sick-call requests on 7-20-21, 8-2-21 and 8-13-21, pleading that he was experiencing excruciating pain and discomfort without any pain management as previously ordered and prescribed.  <u>NOTE:  Plaintiff was never consulted by the medical providers regarding the above-mentioned sick-call requests</u>.

72)  Documented medical and administrative records will in-fact substantiate that the facts alleged above against each named Defendant for failing to properly and adequately treat Plaintiff's injuries and pain demonstrate more than mere negligence and as such Defendants acted indifferently to Plaintiff's serious medical needs which violated his constitutional right not to be subjected to such cruel and unusual punishment.  <u>NOTE:  These actions both by the medical providers/Centurion and security are ongoing as of the preparation of this instant complaint</u>.

**COUNT ONE**
**42 U.S.C. § 1983 CLAIM FOR DELIBERATE INDIFFERENCE**
**(AGAINST DR. FRANCK PAPILLON)**

1) Plaintiff hereby incorporates by reference the allegations contained in paragraphs (1) through (72) above, as set forth in full herein.

2) At all times relevant Dr. Franck Papillon was the Chief Health Officer (CHO) employed by Centurion of Florida, LLC as an agent and/or medical provider at Dade Correctional Institution, and his position is to ensure that the doctors, nurses and/or his-self properly and adequately perform their duties.

3) Plaintiff charges that Dr. F. Papillon, contrary to the Eighth and Fourteenth Amendments to the United States Constitution, knowingly and willfully exercised deliberate indifference by failing to ensure that he and/or his staff provided Plaintiff with the prompt necessary medical treatment in a timely manner for a serious medical condition even after personally viewing the x-ray images hours after Plaintiff's incident.

4) Plaintiff charges that Dr. F. Papillon completely ignored the Specialist's written orders for post-operative treatment causing

22

Plaintiff further injuries resulting in yet a second surgical procedure.

5)   Plaintiff charges that Dr. F. Papillon even after having personal knowledge of Plaintiff's serious medical condition allowed him to walk on it for a period of two weeks which exacerbated the injury to become what was later deemed to be a stress fracture.

6)   Dr. F. Papillon's failure to take prompt action was an exercise of deliberate indifference to the health, safety, welfare and constitutional rights of Plaintiff under color of State law.

7)   Dr. F. Papillon, with full knowledge of the unconstitutional nature of his actions, agreed to and did exercise deliberate indifference to the safety and health of Plaintiff which eventually resulted in two separate surgical procedures.

8)   Plaintiff has been subjected to excruciating pain and discomfort from the onset of his incident 4-1-21, through September 7, 2021, and the pain is ongoing.

## COUNT TWO
## 42 U.S.C. § 1983 CLAIM FOR DELIBERATE INDIFFERENCE
## (AGAINST DR. A. PINO M.D.)

1)   Plaintiff hereby incorporates by reference the allegations contained in paragraphs (1) through (72) above, as set forth in full herein.

2)   At all times relevant, A. Pino was a medical doctor (M.D.) employed by Centurion of Florida, LLC as an agent/medical provider at both South Florida Reception Center and Dade Correctional Institution, and his position is to ensure that inmates/patients receive proper and adequate medical treatment.

3)   Plaintiff charges that Dr. A. Pino, M.D., contrary to the Eighth and Fourteenth Amendments to the United States Constitution, knowingly and willfully exercised deliberate indifference by failing to ensure that [he] and/or the staff provided the Plaintiff with prompt necessary medical treatment in a timely manner for a serious medical condition even after personally reviewing the results and conclusion of x-rays and images provided to him on 4-9-21.

4)  Plaintiff charges that Dr. Pino, even after reviewing all the medical reports pertaining to his injury, allowed Plaintiff to continue to ambulate on his fractured ankle for several more days in excruciating pain resulting in further damage.

5)  Dr. Pino's failure to take immediate action on 4-9-21, after personally reviewing the radiology report, was an exercise of deliberate indifference to the health, safety, welfare and constitutional rights of Plaintiff under color of State law.

6)  Dr. Pino, with full knowledge of the unconstitutional nature of his actions, agreed to and did exercise deliberate indifference to the safety and health of Plaintiff which eventually resulted in major surgery.

7)  Plaintiff has been subjected to unwarranted pain and discomfort from the onset of his incident 4-1-21, through September 7, 2021, and is ongoing.

## COUNT THREE
## 42 U.S.C. § 1983 CLAIM FOR DELIBERATE INDIFFERENCE
## (AGAINST MARK INCH)

1)  Plaintiff hereby incorporates by reference the allegations contained in paragraphs (1) through (72) above, as set forth in full herein.

25

2) At all times relevant Mr. Mark Inch is the Secretary of the Florida Department of Corrections and employed by the State of Florida, his position is to ensure that his employees, agents and/or contractors properly perform their duties, including his-self.

3) Plaintiff charges that Mr. Inch, contrary to the Eighth and Fourteenth Amendments to the United States Constitution, knowingly and willfully exercised deliberate indifference by failing to ensure that his staff and/or contracted agents provided Plaintiff with the prompt necessary medical treatment in a timely manner for his serious medical condition even after being advised and having knowledge of the fact that the Plaintiff was not receiving adequate medical treatment for his serious medical condition through multiple grievances and complaints, that were simply denied and/or unanswered by the Secretary's Office.  Secretary Inch's position is to ensure the health, safety and welfare of every inmate in the department's custody including the Plaintiff's.

4) Secretary Inch's failure to take prompt action even after being alerted about Plaintiff's serious medical condition was an exercise of deliberate indifference to the health, safety and constitutional rights of Plantiff under color of State law.

5)   Secretary Inch, with full knowledge of the unconstitutional nature of his actions and/or inactions, agreed to and did exercise deliberate indifference to the safety and health of Plaintiff which resulted in months of pain and suffering followed by major surgery.

## COUNT FOUR
## 42 U.S.C. § 1983 CLAIM FOR DELIBERATE INDIFFERENCE
## (AGAINST A. MARTINEZ, A.W.)

1)   Plaintiff hereby incorporates by reference the allegations contained in paragraphs (1) through (72) above, as set forth in full herein.

2)   At all times relevant, A. Martinez was the Assistant Warden employed by the Florida Department of Corrections/Dade Correctional Institution.  A.W. Martinez is legally responsible for the operation of Dade C.I. as well as the welfare of all the inmates housed at Dade C.I. including the Plaintiff, Mr. Varnier.

3)   Plaintiff charges that Warden Martinez, contrary to the Eighth and Fourteenth Amendments to the United States Constitution, knowingly and willfully exercised deliberate indifference by failing to ensure that his staff and/or agents provided Plaintiff with prompt necessary medical treatment in a timely manner for a serious medical condition even after having

personal and documented knowledge of Plaintiff's incident and his medical condition.

4)   Warden Martinez's failure to ensure that Plaintiff would receive proper and adequate medical attention even after reviewing flurries of complaints and grievances and having personally seen Plaintiff's injury during normal rounds in the dormitory was an exercise of deliberate indifference to Plaintiffs welfare, health and constitutional rights under color of State law.

5)   Warden Martinez with full knowledge of the unconstitutional nature of his actions and/or inactions agreed to and did exercise deliberate indifference to the safety, health and welfare of the Plaintiff.

**V.**                                          **INJURIES**

As a direct and proximate result of the above mentioned Defendants deliberate indifference towards Plaintiff's serious medical needs, the improper and inadequate treatment, the unnecessary delays in treatment, failure to follow prescribed follow-up post-operative treatment, and complete disregard for Plaintiff's pain and suffering, Plaintiff, Roy L. Varnier suffered further damage to his left tibula resulting in major surgery due to stress fracture

and a second surgery to contain infection, excruciating pain and discomfort and the loss of full movement and strength, thus violating Plaintiff's Eighth and Fourteenth Amendment Rights not to be subjected to such Cruel and Unusual Punishment.

## VI.                         RELIEF

**WHEREFORE**, Roy L. Varnier respectfully prays this Honorable Court enter judgment awarding the following relief:

A) A declaration that the acts and omissions of the Defendants described herein violated Plaintiff's Eighth and Fourteenth Amendment protection from cruel and unusual punishment through deliberate indifference.

B) Compensatory damages in the amount of $15,000.00 (fifteen thousand dollars) against each named Defendant in their individual capacities.

C) Punitive damages in the amount of $10,000.00 (ten thousand dollars) against each named Defendant in their individual capacities.

D) Nominal damages in an amount to be determined by the Honorable Judge assigned to Plaintiff's case.

E) Recovery of all attorney fees and costs of this action.

F) Any further relief this Honorable Court deems just, proper and equitable.

Plaintiff respectfully demands a trial on all issues so triable.

Roy L. Varnier

## VII.   **EXHAUSTION OF ADMINISTRATIVE REMEDIES AND ADMINISTRATIVE PROCEDURES**

A)  Plaintiff's claim arose while confined at Dade Correctional Institution, "Prison."

B)  Dade Correctional Institution has a grievance procedure.

C)  Plaintiff believes Dade Correctional Institution's grievance procedure covers all of his claims.

D)  Plaintiff filed all his grievances at Dade Correctional Institution where the claims arose concerning the facts relating to his complaint.

E)  Plaintiff filed his grievances as follows:

1)  Plaintiff filed his grievance(s) to the Warden, Ms. Boan, and most were responded to by Assistant Warden A. Martinez.

2)  Plaintiff claims the following in a flurry of grievances: Deliberate indifference, failure to adhere to the Specialist's prescribed treatment, failure to treat pain, and excessive delays in treatment.

3)  Every grievance was either denied and/or erroneously returned in an untimely manner which violates the Florida Administrative Code.

4)  Plaintiff exhausted the following (5) sets of grievances to the highest authority as required by the P.L.R.A. Prison Litigation Reform Act:

First:     Formal Log # 2104-463-074, denied 4-29-21
           Appeal Log # 21-6-15002, failed to respond timely.

Second:    Formal Log # 2104-463-119, denied 4-29-21
           Appeal Log # 21-6-15001, failed to respond timely.

Third:     Formal Log # 2105-463-050, denied 5-14-21
           Appeal Log # 21-6-16990, denied 7-16-21

Fourth:    Formal Log # 2105-463-057, denied 6-2-21.
           Appeal Log # 21-6-18457, failed to respond

Fifth:     Formal Log # 2106-463-153, denied 7-2-21
           Appeal Log # 21-6-2466, denied 8-16-21

F)  Plaintiff personally and directly reached out to the following medical staff members on several occasions regarding his medical condition and excruciating pain:

1)  Dr. Franck Papillon
2)  Dr. Gaxiola
3)  Nurse Robles
4)  Nurse Moreno
5)  P.A. Altamirano

G)  Not Applicable

## VIII.                    PREVIOUS LAWSUITS

1)  None

## IX.         CERTIFICATION AND CLOSING

Under Federal Rules of Civil Procedure (11), by signing below, I certify to the best of my knowledge, information, and belief that this complaint:    1)    Is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; 2)    Is supported by existed law or by a nonfrivolous argument for extending, modifying, or reversing existing case law; 3)    The factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and 4)    The complaint otherwise complies with the requirements of Rule (11).

Roy L. Varnier, DC# 489931

## **FOR PARTIES WITHOUT AN ATTORNEY**

I agree to provide the Clerk's Office with any changes to my address where case related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

DATE OF SIGNING ___Sept. 16th___, 2021

_Roy L. Varnier_
Roy L. Varnier, DC# 489931
Dade Correctional Institution
19000 S.W. 377th Street
Florida City, FL  33034



Roy L. Varnier, DC# [illegible]
Dade Correctional Institution
19000 S.W. 377 Street
Florida City, FL 33034

MAILED FROM A
STATE CORRECTIONAL
INSTITUTION
FLORIDA CITY

Hasler
09/17/2021
US POSTAGE $008.55

ZIP 33034
011E11681778

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
OFFICE OF THE CLERK (Rm. 9/09)
400 NORTH MIAMI AVENUE
MIAMI, FLORIDA 33128-7788

LEGAL MAIL ONLY