UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No: 1:21-CV-23412-DPG

ROY L. VARNIER

    Plaintiff,

v.

DR. FRANCK PAPILLON, et al

    Defendants.
_____/

**DEFENDANTS SECRETARY MARK INCH AND ASSISTANT WARDEN AUGUSTO MARTINEZ'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendants, former Secretary of the Florida Department of Corrections Mark S. Inch ("Secretary Inch" or "Defendant"), and Assistant Warden Augusto Martinez ("Asst. Warden Martinez" or "Defendant"), by and through undersigned counsel and pursuant to Rule 12(b), Federal Rules of Civil Procedure, hereby file their Motion to Dismiss Plaintiff's Complaint for failure to state a claim and based on Qualified and Eleventh Amendment Immunities.

### I.    BACKGROUND

Plaintiff filed this case on September 17, 2021, against the Defendants in their individual capacities for alleged Eighth Amendment violations based on deliberate indifference to a serious medical need, during Plaintiff's incarceration at Dade Correctional Institution ("Dade CI"). Complaint (ECF No. 1). Plaintiff had a slip and fall on April 1, 2021. The subsequent medical diagnosis and medical treatment serve as the basis of Plaintiff's Eighth Amendment claim of deliberate indifference.

Plaintiff alleges he slipped and fell on April 1, 2021 on a wet floor. (EFC 1, p.4, ¶1) Plaintiff was taken immediately after the fall to the medical unit and admitted to the E.R. Room by security personnel. (ECF 1, p.4, ¶ ¶ 2-3)  He was seen later that morning by a doctor and x-rays were taken of his ankle and lower back. (ECF 1, p. 4, ¶ 4) His x-rays were sent to a radiologist for review. (ECF 1, p.7, ¶ 14)  In the meantime, Dr. Papillon reviewed his x-ray and determined that Plaintiff did not have a break or fracture (ECF 1, p.5. ¶ 6)  His ankle was bandaged and he was given crutches to ambulate (ECF 1, p.5, ¶ 7)  He was also given ibuprofen and advised to watch the call-out. (ECF 1, p.6, ¶10)

Five days later Plaintiff states he walked back to the medical unit to request the results of his x-rays and to ask for more pain medication (EFC 1, p.6, ¶ 12).  Plaintiff does not state he used his crutches.  Plaintiff was then contacted on April 13, 2021 to return to medical and was advised he did have a fracture and would need a cast. (EFC 1, p.7, ¶ 16)  Plaintiff requested a wheelchair and was given one (EFC 1, p.8, ¶17)  It is after this appointment that Plaintiff writes his first formal grievance in relation to the fall. (EFC 1, p.9, ¶22) Plaintiff was transported to the hospital and on April 15, 2021 he underwent surgery to repair the ankle. (EFC 1, p.10, ¶ 27)  He was kept in the hospital for three days and discharged back to the infirmary at the prison.  (EFC 1, p.12, ¶31)

The next day he was sent to his dorm (EFC 1, p.12, ¶32), Plaintiff asked for medical staff "A.S.A.P." and was, by his own words, "immediately admitted to the infirmary.' (EFC 1, p.13, ¶35)  It was on this date that Plaintiff filed his second formal grievance, regarding what Plaintiff states was "Dr. Papillon's misdiagnosis" of his fracture. Id at ¶36.  Plaintiff was seen at the infirmary for wound care and claims that on "4-8-21" [sic] he was told they were out of gauze to replace his current bandage and claims he was offered to re-bandage with his own soiled gauze.

(ECF1, p.16, ¶48) Plaintiff states he submitted a grievance regarding the bandage on the same date. Id.

On April 29, 2021, Plaintiff returned to Infirmary for wound care and was told it was infected and 9 of his staples were removed. Id at ¶50. On May 4, 2021 during another visit to Infirmary for wound care supplies, Plaintiff states Dr. Papillon removed three more staples. Id at ¶51. On May 7, 2021 the Plaintiff returned to medical for would care and the last remaining staples were removed by Dr. Papillon. (ECF 1, p. 17, ¶53) On May 11, 2021, Plaintiff "again reported to the medical department and Dr. Papillon inspected the wound and stated Plaintiff needed "more antibiotics", suggesting that he had already been receiving antibiotics for an infection. (EFC 1, p. 18, Paragraph 58) On that same date, Plaintiff sent another grievance regarding pain in his back. (ECF 1. p.17, ¶55). On May 19, 2021, the Plaintiff was sent back to the Hospital for his follow-up from his surgery. (ECF 1, p. 18, ¶ 9) At that point he was admitted to the hospital for an infection and it was determined that he would need surgery to debride the infection. (ECF 1, p.19, paragraph 61) Two days after admission, he had the procedure to debride the wound. (Id. At 62) Plaintiff was discharged two days thereafter and transported back to Dade C.I. (Id. at paragraph 63)  He received wound care and a cam boot (ECF 1, p. 20, paragraphs 65-66) days after his return.

Plaintiff makes a claim for deliberate indifference against Secretary Inch in his individual capacity and for his role as Secretary of Florida Department of Corrections.  He seeks a declaration that Secretary Inch violated the Eighth and Fourteenth Amendment rights of the Plaintiff.  He asks for compensatory damages in the amount of $15, 000.00 and punitive damages in the amount of $10,000.00.   He requests nominal damages in an amount to be determined by the Court.

Plaintiff makes a claim for deliberate indifference against Asst. Warden Martinez in his individual capacity and for his role as Assistant Warden at Dade Correctional Institution.  He seeks

a declaration that the Asst. Warden violated the Eighth and Fourteenth amendment rights of the Plaintiff.  He asks for compensatory damages in the amount of $15, 000.00 and punitive damages in the amount of $10,000.00.   He requests nominal damages in an amount to be determined by the Court.

Finally, Plaintiff makes a claim for injuries he describes as the "further damage" to his left fibula due to deliberate indifference, improper and inadequate treatment and failure to follow-up post-operative treatment. (ECF 1, p.28)

## II.      MEMORANDUM OF LAW

### A. Defendant is entitled to bring a motion to dismiss despite Plaintiff's Third Amended Complaint having survived an initial screening under the PLRA

The Complaint was screened by the Court on or about October 8, 2021, under §§ 28 U.S.C. 1915(e)(2)(b) and 1915A of the Prison Litigation Reform Act ("PLRA"). [ECF 5]. In its Order the Court found that the Plaintiff had stated a claim for deliberate indifference based on the allegations against the prison doctors. [ECF 5, p. 3] As related to Secretary Inch and Asst. Warden Martinez, the Court did not articulate any specific findings. [ECF 5].

This Motion to Dismiss is filed to assure that only the proper defendants are named in this lawsuit. The PLRA does not forbid motions to dismiss after pre-suit screening, and in fact has held them to be cumulative rather than alternative. In *Dittmer v. Bradshaw*, the court found that while the inmate plaintiff "made a *prima facie* case for deliberate indifference … both Defendants are entitled to the defense of qualified immunity" and dismissed the Complaint on Defendants' motion. The court held:

> Under the Prisoner Litigation Reform Act of 1995 (PLRA) … a complaint that passes a screening does not necessarily pass a motion to dismiss and passing a

> screening does not render a motion to dismiss moot. … [T]o conclude that a PLRA screening and a Rule 12 motion to dismiss are substitutive, not cumulative, removes the procedural protections of Rule 12 from defendants who happen to be sued by prisoners proceeding *in forma pauperis*. These defendants would be disadvantaged because at the time of the initial screening, the complaint was liberally construed without the benefit of briefing from the defendants. Furthermore, basic fairness weighs in favor of allowing Defendants to have their motion decided on the merits.

*Dittmer v. Bradshaw*, 2015 WL 471371, at *3-4 (S.D. Fla. 2015) (internal citations, quotation marks, and brackets omitted). *See also*, *Garewal v. Sliz*, 611 Fed. App'x 926, 930 (10th Cir. 2015) (Fact that a complaint survives court's initial screening "does not mean the complaint will necessarily withstand a defendant's challenge to its plausibility under Rule 12(b)(6).") Likewise, here, "[a]t the time of the initial screening, the complaint was liberally construed without the benefit of briefing from" Secretary Inch and Asst. Warden Martinez. *Id*. at *4. Nothing in the PLRA or the Federal Rules of Civil Procedure precludes the Court from considering Defendant Inch's Motion to Dismiss after Plaintiff's pleading was screened by this Court, particularly where the Defendant has raised issues that were not directly addressed in the Court's screening Order.

> B. **The Plaintiff has failed to state a claim of deliberate indifference to his medical condition against Defendants because he has not shown that the Defendants were subjectively aware of a serious risk of harm, that Defendants disregarded a risk and that Defendants followed a course of action which constituted more than negligence**

To establish a claim of deliberate indifference against a state official, the Plaintiff must satisfy an inquiry made of objective and subjective components. *Taylor v. Adams*, 221 F.3d 1254, 1257 (11th Cir. 2000) First, the Plaintiff must objectively show that he had a serious medical need. Id. at 1258.  Second, as to the subjective components of the inquiry, the Plaintiff must show that the defendant (1) had subjective knowledge of a risk of serious harm; (2) the Defendant disregarded that risk;  (3) by conduct that is more than mere negligence.  *Brown v. Johnson,* 387 F.3d 1344,

1351 (11th Cir. 2004) Subjective knowledge of the risk requires the official to be both "aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw that inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) The Plaintiff must allege facts that support Defendants had "subjective awareness of facts signaling the need, and an actual inference of required action from those facts." *Taylor* at 1258. Thereafter Plaintiff must show that the defendant's response was subjectively "poor enough to constitute an unnecessary and wanton infliction of pain, and not merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." *Taylor* at 1258 (internal quotations and alterations omitted), citing *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). And, as with any tort claim, the inmate must show that the alleged injury was caused by the defendant's wrongful conduct. *Goebert v. Lee Cty.*, 510 F.3d 1312, 1326 (11th Cir. 2007).

Plaintiff has not shown that either Secretary Inch or Asst. Warden Martinez were subjectively aware of a serious risk of harm. Plaintiff was taken immediately after the fall to the medical unit and admitted to the E.R. Room by security personnel. He was seen later that morning by a doctor and x-rays were taken of his ankle and lower back. He was assessed and given the treatment deemed appropriate by the doctor. On April 13, 2021, he returned to medical and was advised he does have a fracture and would need a cast. It is after this appointment that Plaintiff wrote his first grievance. At no time does Plaintiff allege facts that support that Defendants had had subjective knowledge of a risk of serious harm. As Plaintiff himself has plead, he was under the care of the medical unit and Dr. Franck Papillon immediately following his fall. Plaintiff lists a dozen names of various medical personnel who provided him with care from the time of his fall and thereafter.

At no time does Plaintiff allege that any non-medical staff denied him or delayed any medical treatment. By his own statement Plaintiff was provided access to medical care each time he asked a staffer to assist him: including following the fall, and the time he was in pain after surgery. At no time in paragraphs 1-72 of the Plaintiff's Statement of Claim (EFC 1, pp.4-21) does Plaintiff name the Secretary or the Asst. Warden as someone who was directly involved with his care. Nor does he name them as persons who were aware of a serious risk of harm to the Plaintiff. Finally, Plaintiff does not name them as persons who were deliberately acting to disregard a serious risk to Plaintiff. Plaintiff does not allege that the Defendants had any direct participation in the injuries he says he suffered.

It is insufficient to state that the Asst. Warden saw the Plaintiff's injury on his rounds, as Plaintiff states in his Complaint. (EFC 1, p. 28, ¶4) Other than making the conclusory statement that Asst. Warden Martinez had personally seen his injury while making his rounds, Plaintiff does not provide any further information about that moment that would amount to the Asst. Warden Martinez having any subjective knowledge of a risk of harm to the Plaintiff. Considering the level of detail he goes into in his Complaint regarding his interaction with medical staff and what they were able to observe, it does not seem plausible that if there were more information, he would not have included it. A "bare, conclusory allegation … is insufficient, without more, to warrant further evidentiary consideration." *Taylor v. Singletary*, 148 F.3d 1276, 1285 (11th Cir. 1998). Moreover, Asst. Warden Martinez is not a medical doctor and has no ability to assess a medical issue or second-guess the physician's orders. And since the Asst. Warden is not a medical professional, he must rely on the trained medical professionals to make decisions regarding prisoner care. In fact non-medical officials are expected and allowed to do so. *Williams v. Limestone County, Ala.*, 198 Fed.Appx. 893, 897 (11th Cir. 2006) Indeed, "[i]f a prisoner is under the care of medical experts

as Plaintiff was in this case, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison." *Durmer v. O'Carroll,* 991 F.2d 64 (3d Cir.1993)   Finally, even where prison officials know of a risk they may nonetheless be found free from liability if they responded reasonably to the risk, *even if the harm ultimately was not averted*. *Swain v. Junior,* 961 F.3d 1276, 1287 (11th Cir. 2020) (emphasis in original), citing *Farmer*, 511 U.S. at 844.

Plaintiff's attempt to sue Secretary Inch and Asst. Warden Martinez in their individual capacities for deliberate indifference must be dismissed because there are insufficient allegations to support the claim. Plaintiff has failed to allege facts demonstrating that the Defendants acted with a "sufficiently culpable state of mind." *Swain* at 1285-86. "Ordinary malpractice or simple negligence won't do; instead the plaintiff must show 'subjective recklessness as used in the criminal law.'" Id., citing *Farmer*, 511 U.S. at 839-40.

Plaintiff's allegations do not plausibly give rise to an entitlement to relief on his claim that his Eighth Amendment rights were violated. Even if it is assumed for the purposes of this analysis that Plaintiff had stated an objectively serious medical need, he nevertheless has not met the subjective component of this standard.

### C. **The Plaintiff's attempt to hold Defendants liable under a theory of supervisory liability cannot prevail because there is no allegation of personal participation in the alleged constitutional violation or an allegation of a causal link established between any policy or custom and the injury**

Plaintiff's claims against Secretary Inch and Asst. Warden Martinez are based on a theory of supervisory liability, a theory in which a superior officer is held responsible for the wrongful actions directly inflicted by subordinates. The Supreme Court has held that superior officers may not be subjected to § 1983 liability merely because of their authority to control subordinate

employees. *Rizzo v. Goode,* 423 U.S. 362 (1976). As such, Plaintiff's claims may not lie in this case. Plaintiff has failed to allege that the Defendants personally participated in any alleged constitutional violation or that there was any causal connection between actions by Defendants and an alleged constitutional violation. *See*, *Asad v. Crosby*, 158 Fed. Appx. 166, 170-72 (11th Cir. 2005) (dismissal of supervisory liability claims upheld where plaintiff failed to show defendants personally participated in alleged constitutional violation, or that there was causal connection between actions and alleged constitutional violation). Government officials "cannot be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior…and [b]ecause vicarious liability is inapplicable to…§1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) The Court in *Iqbal* rejected the argument that a supervisor's "mere knowledge" of a subordinate's acts equating to the supervisor violating the Constitution. Id. at 677.

The Plaintiff has not alleged any personal participation by the Defendants that led to his injury. Nor has Plaintiff alleged any facts that Defendants had a policy or custom that were the cause of his injuries. "Plaintiff's actions against these [Supervisors] will prevail only if there is a causal link established between an official policy or custom and a plaintiff's injury." *Moore v. McNeil*, 2011 WL 304313 (S.D. Fla. Jan. 28, 2011) (citing *Byrd v. Clark,* 783 F.2d 1002, 1008 (11th Cir.1986) (citing *Monell v. Dep't of Social Srvs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). It is not sufficient to allege that the Secretary's and Assistant Warden's "positions are to ensure the health, safety and welfare of every inmate in the department's custody." (ECF 1, p.26, ¶3) The Asst. Warden and the Secretary are not medical professionals. As previously argued above, Defendants must rely on the trained medical professionals to make decisions regarding

prisoner care and in fact they are entitled to do so. *Williams v. Limestone County, Ala.*, 198 Fed.Appx. 893, 897 (11th Cir. 2006) "If a prisoner is under the care of medical experts as Plaintiff was in this case, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison." *Durmer v. O'Carroll,* 991 F.2d 64 (3d Cir.1993)  It is clear from the Plaintiff's own statement of facts that the non-medical staff was responsive to his needs and the medical staff was appointed to treat his injuries.  There is nothing to evidence a custom or policy of denial of medical assistance when needed.

Nor is it sufficient for Plaintiff to allege that the Defendants had knowledge of the Plaintiff's condition through grievances or complaints. (ECF 1, p.26, ¶3)  Plaintiff cannot establish liability against Secretary Inch and Asst. Warden Martinez simply because he filed grievances and appeals which Secretary Inch and Asst. Warden Martinez saw, reviewed, or even denied. *See*, *Marte v. Pepper*, CV 317-012, 2017 WL 2198389, at *4–5 (S.D. Ga. Apr. 28, 2017), *report and recommendation adopted,* CV 317-012, 2017 WL 2198381 (S.D. Ga. May 18, 2017) ("The Plaintiff cannot establish liability merely because he filed a grievance or appeal upon which Defendants ruled.") (citing *Asad*, 158 Fed. Appx. at 170-72). As previously stated, mere knowledge is insufficient to hold the Supervisor responsible for the acts of subordinates.

The Plaintiff's attempt to hold Defendant's under a theory of supervisory liability cannot prevail because there is no allegation of personal participation in the alleged constitutional violation or an allegation that a causal link was established between any policy or custom and the injury.

**D. Plaintiff's claim for Declaratory Relief must fail because no cognizable relief is requested**

The Court must also dismiss Plaintiff's claim for declaratory relief. Such a claim should fail as to Defendants in their individual capacity, as such relief is not recognized against state officials sued in their individual capacity. *See, e.g., Ingalls v. U.S. Space & Rocket Ctr.*, 2015 WL 4528687, at *8 (M.D. Ala. July 27, 2015) (a plaintiff cannot obtain injunctive or declaratory relief under Section 1983 from government officers sued in their individual capacities), *aff'd* 679 F. App'x 935 (11th Cir. 2017); *Hall v. Jarvis*, No. 3:10-cv-442-J-99MMH-TEM, 2011 WL 971125, at * 6 (M.D. Fla. March 2, 2011) (granting motion to dismiss claim for injunctive and declaratory relief against defendant in his individual capacity and allowing such claims to proceed against defendant in his official capacity).

The only cognizable relief available against the Defendants in their individual capacity sought by Plaintiff in this Section 1983 action is compensatory damages. However, Defendants are protected from money damage claims by the doctrine of qualified immunity. Because there is no cognizable claim for relief, Defendant is entitled to dismissal.

E. **The Secretary and Asst. Warden Martinez are entitled to Qualified Immunity against Plaintiff's individual liability claims**

Secretary Inch and Asst. Warden Martinez are entitled to qualified immunity against Plaintiff's individual liability claim. An official is entitled to qualified immunity in his performance of discretionary functions, regardless of the official's subjective motive. *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998). The public policy behind qualified immunity reflects a desire to prevent the potentially devastating effect of unrestrained individual capacity claims against officials. *Harlow v. Fitzgerald*, 457 U.S. 800, 814, 819 (1982). Qualified immunity is only defeated when a plaintiff shows "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*,

563 U.S. 731, 735 (2011). Immunity is "the rule, not the exception." *Rowe v. Schreiber*, 139 F.3d 1381, 1384 (11th Cir. 1998)

There is no actual constitutional violation sufficiently alleged against Secretary Inch or Asst. Warden Martinez in Plaintiff's Complaint, and certainly nothing "sufficiently clear that a reasonable official would understand that what he is doing violates that right" (*Anderson v. Creighton*, 483 U.S. 635, 640) by denying an appeal or even "several" appeals. The qualified immunity inquiry must focus on the specific context of the case. It is undisputed that Plaintiff's claims, to the extent that he has stated any against Defendants, only relate to conduct taken within the course of the Defendants' discretionary duties. Defendants acted within their authority with respect to actions taken regarding Plaintiff's grievances, including their denials. And, as the case law clearly states, no constitutional right is violated by denying a grievance or an appeal of a grievance, when the person reviewing the grievance or appeal took no part in the actions complained of which encompass the alleged constitutional violation. Again, in addressing the plaintiff's claim for deliberate indifference to a serious medical need in *Marte*, the court held, "To the extent Plaintiff attempts to hold Defendants … liable simply because they denied his grievance, the claim fails." *Id*. at *5. The court further stated:

> The Court also notes Plaintiff has sued the Health Services Administrator and Warden who relied on the opinions of a physician in responding to Plaintiff's grievances. Prison officials who are not medical professionals must rely on the decisions of trained professionals regarding care for inmates, and by relying on information provided by a physician and a surgeon who reviewed the CT scan, they could not have the requisite subjective intent to violate the Eighth Amendment.

*Id*. at *4.

Plaintiff makes allegations of neglect by various medical professionals at Dade CI, and a conclusory claim of liability for the collective effects of *all* the Defendants' alleged actions. However, "[t]he dispositive question is whether the violative nature of particular conduct is clearly

established," (*Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015)) (emphasis added) and, again, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Because "Plaintiff cannot establish liability merely because he filed a grievance or appeal upon which Defendants ruled," (*Marte*, 2017 WL 2198389 at *4–5), <u>even if</u> he arguably pled a claim for negligence, complaint is not adequate to survive a motion to dismiss, as it "offers [mere] 'labels and conclusions'" without further factual support with respect to a constitutional violation by the Defendants. *Iqbal*, 556 U.S. at 678 (<u>quoting</u> *Twombly*, 550 U.S. at 555, 557).

    F. **<u>Plaintiff's claim for compensatory damages as to Secretary Inch in his official capacity are barred by Eleventh Amendment Immunity</u>**

Insofar as Plaintiff's claim against Secretary Inch can be construed to have been in his official capacity, that is effectively a claim against the Department of Corrections. *See, e.g., Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (an agency head sued in his official capacity is another way of alleging claims against the agency itself). Plaintiff seeks compensatory from the Secretary – and such claims must fail. Suits against a state employee in his or her official capacity "generally represent only another way of pleading an action against an entity of which an officer is an agent," and therefore are treated as suits against the State. <u>Hafer v. Melo</u>, 502 U.S. 21, 25 (1991) (quotation omitted). Such suits, where the real party in interest is the State – even if it is not named as a defendant – may be barred by sovereign immunity, *i.e.*, "the State is the real party in interest and is entitled to invoke the Eleventh Amendment's protection." <u>Lewis v. Clarke</u>, 137 S. Ct. 1285, 1290-91 (2017).

## **<u>CONCLUSION</u>**

Plaintiff has failed to plead a valid cause of action against Defendants in their individual capacity and dismissal is required. Plaintiff has failed to state a constitutional claim against Defendants in their individual capacity, dismissal of that claim also should be with prejudice. *See*, *Gary v. U.S.*, 540 F. App'x 916, 917 (11th Cir. 2013) ("[A] district court need not allow amendment when it would be futile."). Further, Plaintiff's claims against Defendants are barred by qualified immunity.

Respectfully Submitted,

ASHLEY BROOKE MOODY

FLORIDA ATTORNEY GENERAL

/s/ MARTHA HURTADO
Martha Hurtado
Assistant Attorney General
Fla. Bar No. 103705
Email: Martha.Hurtado@myfloridalegal.com
OFFICE OF ATTORNEY GENERAL
110 SE 6th Street, 10th Floor
Fort Lauderdale FL  33301-5001
Telephone:    (954) 712-4600
Fax:               (954) 527-3702
Attorney for defendants former Secretary of FDC Mark Inch and Assistant Warden Martinez

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 14, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served on this date on all counsel of record via CM/ECF or pro se parties identified below in the manner specified:

*/s/ Martha Hurtado*
Martha Hurtado
Assistant Attorney General

## SERVICE LIST

Roy L. Varnier v. Dr. Franck Papillon, et al
CASE NO: 21-CV-23412-DPG
United States District Court, Southern District of Florida

Varnier, Roy Lee, DC# 489931 (*pro se* plaintiff)
6116 Magnolia Park Blvd
Riverview, Florida 33578