IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

ROY L. VARNIER,

    Plaintiff,

vs.

DR. FRANCK PAPILLON, CHIEF HEALTH OFFICER (D.C.I.), DR. A. PINO, M.D., (S.F.R.C.), MR. MARK INCH, Secretary (D.O.C.), MR. A. MARTINEZ, ASSISTANT WARDEN (D.C.I.),

    Defendants.

Case No.: 1:21-cv-23412-DPG

**DEFENDANT DR. FRANCK PAPILLON'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

Pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Rule 7.1, Defendant Dr. Franck Papillon ("Dr. Papillon") moves to dismiss Plaintiff Roy L. Varnier's Complaint (ECF No. 1), and states as follows:

**INTRODUCTION**

This case stems from an alleged slip and fall that occurred while Mr. Varnier was incarcerated at Dade Correctional Institution ("Dade C.I."). Mr. Varnier claims prison officials violated his constitutional rights because his broken ankle was misdiagnosed and the treatment that followed only made the problem worse. But as unfortunate as Mr. Varnier's alleged injuries are, this case is really about the dividing line between a constitutional violation and a tort. The Constitution does not require that the absolute best medical care be provided; that is an issue best left for state tort law to sort out. Rather, the Eighth Amendment requires a certain level of minimally adequate care and once that care has been provided, there is no violation. And in this case, such adequate care was provided.

## FACTUAL ALLEGATIONS FROM COMPLAINT

Mr. Varnier alleges he slipped and fell on a wet floor on April 1, 2021, at approximately 5:00 a.m. (ECF No. 1, p. 4, ¶ 1). He was subsequently taken to the medical department in a wheelchair and was admitted to the E.R. Room. *Id*. at ¶¶ 2–3. X-rays were taken of Mr. Varnier's left ankle and low back at approximately 10:00 a.m. *Id*. at ¶ 4. The x-rays were preliminarily reviewed by Dr. Papillon, who determined there was no evidence of breaks or fractures. *Id*. at p. 5, ¶ 6; p. 7, ¶ 15. Dr. Papillon believed there was no fracture, and Mr. Varnier was given an ace bandage, Ibuprofen, and crutches to ambulate while waiting for the x-ray results to return from the radiologist. *Id.* at p. 5–6, ¶¶ 7–10. Mr. Varnier was told "he would be placed on the call-out when the results from the x-rays returned." *Id*. at ¶ 9.

On April 6, 2021, Mr. Varnier states he walked back to the medical department to inquire about his x-ray results. *Id*. at p. 6, ¶ 11–12. Mr. Varnier does not state he used the crutches he was previously provided. He alleges he was "told not to return to medical until he was notified." *Id*. at ¶ 13.

Mr. Varnier was called to the medical department on April 13, 2021, where he was informed by Dr. Papillon of a fractured fibula that would need a cast. *Id*. at p. 7, ¶ 16. At that time, Mr. Varnier was given a wheelchair. *Id.* at p. 8, ¶ 17.

Mr. Varnier was taken to Northshore Medical Center ("NMC") on April 14, 2021. *Id.* at p. 10, ¶ 25. Ankle surgery was performed the following day on April 15, 2021. *Id*. at p. 11, ¶ 28. On April 18, 2021, Mr. Varnier was discharged from NMC and transported back to the Dade C.I. infirmary with post-operative orders that included: (1) wound care once a day; (2) strict, no weight bearing; (3) bed rest utilizing two pillows to elevate his left leg; and (4) a follow-up at NMC in two weeks. *Id.* at ¶¶ 29–30.

Mr. Varnier claims that he was sent back to general population on April 19, 2021, the morning after he was brought to the infirmary on April 18, 2021. *Id.* at p. 12, ¶¶ 31–32. On April 20, 2021, Mr. Varnier claims that he woke up in unbearable pain, asked for medical staff, and was immediately admitted to the infirmary. *Id.* at ¶ 35. Mr. Varnier was discharged from the infirmary on April 23, 2021. *Id.* at p. 14, ¶ 44.

On April 28, 2021, Mr. Varnier returned to the infirmary for wound care. *Id.* at p. 16, ¶ 48. Mr. Varnier claims that the treating nurse told him they were out of wound care supplies and suggested that he re-use the gauze already on his wound. *Id.* On the following day, April 29, 2021, Mr. Varnier alleges he returned to the infirmary for wound care and was told by the treating nurse his wound was infected. *Id.* at ¶ 49. The treating nurse immediately contacted Dr. Papillon, who allegedly, without inspecting the wound, advised the treating nurse to remove nine (9) of the sixteen (16) staples. *Id.* at ¶ 50.

Mr. Varnier alleges he returned to the infirmary on May 4, 2021, where Dr. Papillon inspected the wound and decided to remove three (3) of the remaining seven (7) staples. *Id.* at ¶ 51. Mr. Varnier states Dr. Papillon removed the remaining four (4) staples on May 7, 2021, and told the treating nurse to apply a clean dressing. *Id.* at p. 17, ¶ 53. On May 11, 2021, Mr. Varnier states he reported to the medical department where Dr. Papillon inspected the infection and stated that Mr. Varnier needed more antibiotics. *Id.* at p. 18, ¶ 58.

On May 19, 2021, Mr. Varnier returned to NMC for a follow-up appointment. *Id.* at ¶ 59. At that point he was admitted to the hospital for an infection, and it was determined that he needed surgery to debride the infection. *Id.* at p. 19, ¶¶ 60–61. The surgery was performed on May 21, 2021. *Id.* at ¶ 62. Mr. Varnier was discharged from NMC and transported back to Dade C.I. on May 23, 2021. *Id.* at ¶ 63. Mr. Varnier was discharged with post-operative orders for daily wound

3

care and to be placed in a special cam boot. *Id*. at ¶ 64. He received his cam boot on June 2, 2021. *Id*. at p. 20, ¶ 66.

Mr. Varnier claims that Dr. Papillon violated his constitutional rights by failing to provide necessary medical care after viewing the x-rays. *Id.* at p. 22, ¶ 3. More specifically, Mr. Varnier claims that Dr. Papillon was deliberately indifferent by allowing "him to walk on [his ankle] for a period of two weeks" and by "completely ignoring the Specialist's written orders for post-operative treatment." *Id.* at pp. 22–23, ¶¶ 4–5. Mr. Varnier claims that Dr. Papillon's alleged indifference ultimately resulted in both surgeries. *Id.* at p. 23, ¶ 7.

## **LEGAL STANDARD**

When considering the evidence and ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, the complaint allegations must be construed in the light most favorable to the plaintiff. *Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," which simply "are not entitled to [an] assumption of truth." *Iqbal*, 556 U.S. at 678, 680.

Nonetheless, the plaintiff must still give the defendants "fair notice" of both the claim and "the grounds upon which it rests" to satisfy her pleading requirements. Federal Rule of Civil Procedure 8(a) demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Thus, a plaintiff may not rely on "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Gill*, 941 F.3d at 511 (quoting *Iqbal*, 556 U.S. at 678); *see also Jackson*, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts will not

4

prevent dismissal"). Rather, the well-pleaded allegations must nudge the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

## ARGUMENT

This Court should dismiss the claims against Dr. Papillon because the Complaint fails to state a claim for deliberate indifference claim for three reasons. *First*, Mr. Varnier was provided constitutionally adequate medical care. *Second*, Mr. Varnier has not alleged any facts showing that Dr. Papillon was subjectively aware of his broken ankle. And *third*, Mr. Varnier has not alleged any facts showing that Dr. Papillon was subjectively aware that the post-operative follow-up orders had not been followed.

### I. Legal Standards for Deliberate Indifference Claims

The Eighth Amendment protects inmates from "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). But a "prisoner bringing a deliberate-indifference claim has a steep hill to climb." *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1266 (11th Cir. 2020). As the Eleventh Circuit recently explained,

> "[D]eliberate indifference is *not* a constitutionalized version of common-law negligence." "To the contrary, we (echoing the Supreme Court) have been at pains to emphasize that 'the deliberate indifference standard ... is far more onerous than normal tort-based standards of conduct sounding in negligence,' and is in fact akin to 'subjective recklessness as used in the criminal law.'" With respect to prisoners' medical care, in particular, we have held that the Eighth Amendment doesn't require it to be "perfect, the best obtainable, or even very good." Rather, we have emphasized, "[m]edical treatment violates the [E]ighth [A]mendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."

*Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1271 (11th Cir. 2020) (internal citations omitted) (emphasis in original); *accord Swain v. Junior*, 961 F.3d 1276, 1285 (11th Cir. 2020) ("As applied in the prison context, the deliberate-indifference standard sets an appropriately high bar. A plaintiff must prove that the defendant acted with 'a sufficiently culpable state of mind.'").

5

Indeed, the Eleventh Circuit has cautioned courts against employing a "'perhaps they could be doing more' standard" when considering claims of deliberate indifference to a serious medical need. *Hammonds v. Theakston*, 833 F. App'x 295, 301 (11th Cir. 2020) (quoting *Hoffer*, 973 F.3d at 1271). Instead, courts should first consider the care provided to an inmate and, if such care satisfies the constitutional minimum (because it is not conscience shocking or intolerable to fundamental fairness), then there is no need to consider whether a defendant could have done more. *Hoffer*, 973 F.3d at 1277 (concluding it did not need to reach the question of whether less efficacious care was provided pursuant of a cost defense "because we have held that the Eighth Amendment's 'minimally adequate care'" was provided).

A deliberate indifference claim involves both an objective and subjective component. *Keohane*, 952 F.3d at 1266. First, a prisoner must demonstrate "an objectively serious medical need." *Id.* "Second, the inmate must prove that prison officials acted with deliberate indifference to that need by showing (1) that they had 'subjective knowledge of a risk of serious harm' and (2) that they 'disregard[ed]' that risk (3) by conduct that was 'more than mere negligence.'" *Id.* (internal citations omitted).[1] "With regard to the subjective component of the Eighth Amendment claim, the Court in *Farmer* [*v. Brennan,* 511 U.S. 825, 837 (1994),] held that the prison 'official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and he must also draw the inference.*'" *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 617 (11th Cir. 2007) (emphasis added).

---

[1] The Eleventh Circuit recognized a "tension within our precedent" regarding whether deliberate indifference requires proof of more than "gross" or "mere" negligence. *Patel v. Lanier Cty. Georgia*, 969 F.3d 1173, 1188 n.10 (11th Cir. 2020). But this may be a distinction without a difference because the Supreme Court likens deliberate indifference to "subjective *recklessness* as used in the criminal law." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 839–40 (1994)).

6

To constitute deliberate indifference, "[m]edical treatment [must be] so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Hoffer*, 973 F.3d at 1271. "[M]ere evidence of negligence 'in diagnosing or treating a medical condition' or a showing of medical malpractice does not establish deliberate indifference." *Monteleone v. Corizon*, 686 F. App'x 655, 658 (11th Cir. 2017). In other words, "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106.

And "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Hoffer*, 973 F.3d at 1272. "[T]he question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) (quoting *Estelle,* 429 U.S. at 10). That's because "a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment [fails to] support a claim of cruel and unusual punishment." *Keohane*, 952 F.3d at 1266; *accord Bismark v. Fisher*, 213 F. App'x 892, 897 (11th Cir. 2007) ("Nothing in our case law would derive a constitutional deprivation from a prison physician's failure to subordinate his own professional judgment to that of another doctor; to the contrary, it is well established that 'a simple difference in medical opinion' does not constitute deliberate indifference." (quoting *Waldrop v. Evans,* 871 F.2d 1030, 1033 (11th Cir. 1989)).

II. **Mr. Varnier fails to state a claim for deliberate indifference.**

    A. **Mr. Varnier was provided constitutionally adequate medical care and as such, Mr. Varnier fails to allege that Dr. Papillon disregarded a risk of serious harm by more-than negligent conduct.**

The Complaint against Dr. Papillon should be dismissed because Mr. Varnier was provided constitutionally adequate medical care. Moreover, because he was provided adequate care, Mr. Varnier cannot show that Dr. Papillon disregarded a risk of serious harm by more-than-negligent conduct. The Eighth Amendment does not require medical care provided to prisoners to be "perfect, the best obtainable, or even very good." *Harris v. Thigpen*, 941 F.2d 1495, 1510 (11th Cir. 1991). Instead, '[m]edical treatment violates the Eighth Amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id.* at 1505. To prevail, Mr. Varnier would need to show that the care provided by Dr. Papillon was "poor enough to constitute 'an unnecessary and wanton infliction of pain,' and not merely accidental inadequacy, 'negligen[ce] in diagnosi[s] or treat[ment],' or even '[m]edical malpractice' actionable under state law." *Taylor*, 221 F.3d at 1258. Additionally, Mr. Varnier must show that Dr. Papillon acted with a "subjective intent to punish," meaning that Dr. Papillon "acted with an attitude of deliberate indifference." *Id.*; *see also Swain*, 961 F.3d at 1285 ("A plaintiff must prove that the defendant acted with 'a sufficiently culpable state of mind.'").

The Complaint demonstrates that Mr. Varnier received consistent medical attention and that Dr. Papillon acted without a sufficiently culpable state of mind. Following his fall, Mr. Varnier was immediately taken to the E.R. Room where x-rays were taken of his left ankle and lower back. (ECF No. 1, p. 4, ¶ 2–4). Dr. Papillon reviewed the x-rays and determined there was no break. *Id.* at p. 5, ¶ 6. Mr. Varnier was given crutches, an ace bandage, and Ibuprofen. *Id.* at ¶¶ 7–10. Once it was determined that Mr. Varner's ankle was broken, he was given a wheelchair and was sent to NMC for further treatment. *Id.* at p. 10, ¶ 25. While at NMC, more x-rays were taken, and Mr. Varnier underwent surgery to repair his ankle. *Id.* at p. 11, ¶ 28.

Upon his return to Dade C.I., Mr. Varnier was admitted to the infirmary and he was given medical attention at his request. *Id.* at p. 12, ¶ 35. Once Dr. Papillon learned of the infection in Mr.

Varnier's surgical wound, Dr. Papillon ordered the staples be removed—on three separate occasions—to stave off the infection. *Id.* at p. 16–17, ¶¶ 50–53. Dr. Papillon also ordered Mr. Varnier receive antibiotics to treat his infection. *Id.* at p. 18, ¶ 58. Mr. Varnier was subsequently transferred back to NMC for follow-up care where a second surgery was performed to treat the infection. *Id*. at p. 18–19, ¶¶ 59–62. Upon his return to Dade C.I., Mr. Varnier was again placed in the infirmary, where he received a special cam boot. *Id*. at ¶¶ 63–65.

That Dr. Papillon erred in reading the x-ray does not constitute deliberate indifference. *See Monteleone*, 686 F. App'x at 658 ("[M]ere evidence of negligence 'in diagnosing or treating a medical condition' or a showing of medical malpractice does not establish deliberate indifference."); *see also Heidtke v. Corrections Corp. of America*, 489 Fed. App'x 275, 283 n.6 (5th Cir. 2012) ("Even if Defendant misread the x-ray, at worst, Defendant committed malpractice. Defendant treated Plaintiff and was not deliberately indifferent, though he may have been negligent."). Further, that Dr. Papillon did not immediately prescribe the wheelchair that Mr. Varnier demanded does not constitute deliberate indifference. *See Bismark*, 213 F. App'x at 896 ("A plaintiff cannot establish deliberate indifference simply by second guessing the conclusions reached by a prison medical official in the exercise of his medical judgment."). Moreover, even if Dr. Papillon's orders to remove the staples from the surgical wound exacerbated the infection, Mr. Varnier cannot show that the staple removal was not performed in the exercise of Dr. Papillon's medical judgment or that Dr. Papillon somehow intended to punish Mr. Varnier. *See Hoffer*, 973 F.3d at 1272 ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.").

Nothing about the care that Mr. Varnier received is so conscience shocking as to violate the Constitution. *Waldrop*, 871 F.2d at 1035 ("[W]hen a prison inmate has received medical care,

9

courts hesitate to find an Eighth Amendment violation."). And because the care met the constitutional minimum, the Court need not ask what more could have been done. *Hammonds*, 833 F. App'x at 301 (noting that deliberate indifference is not a "'perhaps they could be doing more' standard."). Accordingly, the Complaint should be dismissed because Mr. Varnier received constitutionally adequate medical care and Mr. Varnier cannot establish that Dr. Papillon disregarded a risk of serious harm by more-than-negligent conduct.

> **B.  Mr. Varnier failed to allege that Dr. Papillon was subjectively aware of his broken ankle.**

Mr. Varnier's claims alleged prior to April 13, 2021, fail against Dr. Papillon because there are no factual allegations demonstrating that Dr. Papillon was subjectively aware of a serious risk of harm. Subjective knowledge of the risk requires the official to be both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. In other words, Mr. Varnier must allege facts supporting that Dr. Papillon had "subjective awareness of facts signaling the need, and an actual inference of required action from those facts." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000).

Mr. Varnier has not shown that Dr. Papillon had any subjective knowledge of Mr. Varnier's broken ankle prior to April 13, 2021, the date in which Dr. Papillon informed Mr. Varnier of the fracture. (ECF No. 1 at p. 7, ¶ 16). Instead, Mr. Varnier's allegations demonstrate that Dr. Papillon was not subjectively aware because, according to Mr. Varnier, Dr. Papillon studied the x-rays on the date of the fall (April 1, 2021) and determined that there was no break. *Id*. at p. 5, ¶¶ 5–6. Thus,

Dr. Papillon could not be subjectively aware because Dr. Papillon did not draw the inference of a fracture.[2]

Moreover, even if Dr. Papillon was subjectively aware of the broken ankle on April 1, 2021, Mr. Varnier alleges no facts that Dr. Papillon drew the inference that more action than the treatment provided was required. As outlined in the Complaint, Dr. Papillon assessed the x-rays and determined that crutches, an ace bandage, and Ibuprofen were appropriate to treat Mr. Varnier's condition at that time. *Id.* at p. 6, ¶ 10. There are no allegations that Dr. Papillon actually inferred that the use of crutches would be inadequate to treat or would exacerbate Mr. Varnier's condition to the point that surgery would be required. Because Mr. Varnier has not alleged that Dr. Papillon was subjectively aware of a serious medical need, the Complaint against Dr. Papillon should be dismissed.

      **C.**      **Mr. Varnier failed to allege Dr. Papillon was subjectively aware that the post-operative order for Mr. Varnier to return to NMC had not been followed.**

Likewise, Mr. Varnier's claim that Dr. Papillon was deliberately indifferent by "completely ignoring" the post-operative NMC follow-up order fails because Mr. Varnier alleges no facts demonstrating that Dr. Papillon was subjectively aware that such order had not been implemented. As discussed above, subjective knowledge of the risk requires the official to be both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and

---

[2] Mr. Varnier does allege in conclusory fashion that Dr. Papillon was provided with the Radiology Report from Dr. Gregory J. Orth on the date of the fall, insinuating that Dr. Papillon was aware of the break from the outset. *Id.* at p. 8, ¶ 18. But such allegation is inconsistent with other factual allegations alleged in the Complaint. For example, Mr. Varnier states Dr. Papillon gave him crutches to use while awaiting the x-ray results, suggesting that Dr. Papillon did not immediately have the full report from Dr. Orth at the time of diagnosis. *Id.* at p. 5, ¶ 7. And on April 6, 2021, Mr. Varnier went to the medical department to inquire about the x-ray results and was told not return to medical until he was notified, suggesting that the results were not yet available. *Id.* at p. 6, ¶¶ 11–13. Further, Mr. Varnier states that Dr. A. Pino reviewed the report on April 9, 2021, while citing to the Radiology Report date stamped as reviewed by Dr. Pino. *Id.* at p. 8, ¶ 19. Notably, Mr. Varnier does not state whether the report was stamped as reviewed by Dr. Papillon.

he must also draw the inference." *Farmer*, 511 U.S. at 837. Mr. Varnier alleges no facts that Dr. Papillon drew the inference that the order for Mr. Varnier to return to NMC for a post-operative follow-up had not been completed. In fact, in the Complaint, Mr. Varnier even admits that Dr. Papillon lacked the knowledge that Mr. Varnier had not returned to NMC for a follow-up. Mr. Varnier alleges when he told Dr. Papillon he not returned to NMC for a follow-up, Dr. Papillon told Mr. Varnier that he (Dr. Papillon) did not control the scheduling. (ECF No. 1 at p. 17, ¶ 54). And after Mr. Varnier informed Dr. Papillon, Mr. Varnier was taken to NMC for a follow-up. *Id*. at p. 18, ¶ 59. Thus, Mr. Varnier cannot show that Dr. Papillon was subjectively aware that the post-operative follow-up order had not been completed, and as such, the Complaint should be dismissed.

## CONCLUSION

As outlined above, because Mr. Varnier was provided with constitutionally adequate medical care, there can be no constitutional violation. Errors in medical judgment do not rise to a level sufficient to conflict with the Eighth Amendment. As such, Dr. Papillon respectfully requests that Mr. Varnier's Complaint be dismissed.

Respectfully submitted:

*/s/ W. Blair Castle*
Brian A. Wahl (FBN 95777)
**BRADLEY ARANT BOULT CUMMINGS LLP**
One Federal Place-1819 5th Avenue, N.
Birmingham, AL  35203
Telephone: (205) 521-8000
Fax: (205) 521-8800
Primary Email:    bwahl@bradley.com
Secondary Email:  tramsay@bradley.com

>Jacob Hanson (FBN 91453)
>W. Blair Castle (FBN 1031504)
>**BRADLEY ARANT BOULT CUMMINGS LLP**
>100 North Tampa Street, Suite 2200
>Tampa, FL  33602
>Telephone: (813) 559-5500
>Fax: (813) 229-5946
>Primary Email:     jhanson@bradley.com
>Secondary Email:  tabennett@bradley.com
>                  sdhayes@bradley.com
>Primary Email:     bcastle@bradley.com
>Secondary Email:  pskidmore@bradley.com
>***Counsel for Defendants Dr. Franck Papillon***

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 5, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification to counsel of record and that a true and correct copy of the foregoing was served, via U.S. Mail, on the following non-CM/ECF participant:

>Roy L. Varnier
>6116 Magnolia Park Road
>Riverview, FL  33578
>*pro se Plaintiff*

>                    /s/ *W. Blair Castle*
>                    ***Counsel for Defendant Dr. Franck Papillon***

13